RECNC*251008PM0326MDG7-ATH

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| CAREY LENEIL MCCOMAS, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| | : Case No. 3:24-cv-00089-CDL |
| THE UNIFIED GOVERNMENT OF | : |
| ATHENS, CLARKE COUNTY | : |
| GEORGIA, KELLY GIRTZ, IN HIS | : |
| OFFICIAL CAPACITY, ATHENS | : |
| CLARKE COUNTY POLICE | : |
| DEPARTMENT, JERRY SAULTERS, | : |
| IN HIS OFFICIAL CAPACITY, JIMMY | : |
| KING, IN HIS INDIVIDUAL AND | : |
| OFFICIAL CAPACITY, CALEB | : |
| CAMERON, IN HIS INDIVIDUAL AND | : |
| OFFICIAL CAPACITY, STANELY | : |
| DENIS, IN HIS INDIVIDUAL AND | : |
| OFFICIAL CAPACITY, AND AUSTIN | : |
| FALCON, IN HIS OFFICIAL | : |
| CAPACITY, | : |
| | : |
| Defendants | : |

PLAINTIFFS RESPONSE TO THE STATEMENT OF MATERIAL FACTS SUBMITTED BY THE MAYOR, KELLY GIRTZ AND JERRY SAULTERS, JIMMY KING, STANELY DENIS, CALEB CAMERON, AUSTIN FALCON

COME NOW Plaintiff Carey Mccomas, in propria persona respectfully, to respond to the narrative submitted by the defendants. I have gave insight into each of the 56 points set forth by the defense counsel in order to shed a bit more light on each subject as follows,

1.

Carey, nor Clarence Dake ("Clarence"), own 150 Pine Lodge Road or 250 Pine Lodge Road. Both properties are owned by Athens Village Development Partners, LLC. (Athens Pinecrest"). (Exh. 1-Deposition of Carey McComas, pg.55, lns. 16-17).

Response to 1.

This is a true statement, however there are three properties affiliated with or owned by the Athens Pinecrest Village Development Partners LLC, otherwise, (APVDP LLC). I may not have owned the property, however I was at the property in good faith to the owner. I spoke to the owner and told him of my plan to live at the house, he did not tell me no, as his words were when I asked him about residing at the 150 house, "I'm not going to tell you no, I'm not going to tell you yes". So after that I told him that I would be moving in to the house at 150 Pine Lodge and when he wants me to leave just let me know. The conversation ended with Hooker telling me, "Ok you have a nice day", I told him thank you.

2.

In February of 2023, Carey found 150 Pine Lodge for rent on a website. (Deposition of Carey, pgs. 29-30, lns. 17-16).

Response to 2.

True. Realtor.com is where the property was listed for rent. This site, as well as Trulia was where the police got their information regarding the property located at 150 Pine Lodge rd. on the 15th of May, 2023. (10:20-10:40 Trespass, Officer Camerons body cam) you see Officer Caleb Cameron scrolling through his computer looking for information on the property. Why he didn't use a government website is beyond me, also unprofessional and disturbing to say the least.

3.

Carey inspected 150 Pine Lodge in February of 2023 (*Id* at pg. 35, Ins. 1-3) and placed several online applications to rent 150 Pine Lodge. (*Id*. At pg. 31, Ins.2-25). No one responded to Carey's rental applications. (*Id* at pgs. 31-32, Ins 24-2).

Response to 3.

True. I paid a fee of $120 to submit 4 applications. I never received a response from anyone.

4.

After not receiving any response from his applications, Carey looked online to determine the owner of 150 Pine Lodge. (*Id* at pgs. 32-33, Ins. 3-10).

Response to 4.

I had been visiting the property for quite a while, even after I had put several applications to rent the property on Realtor.com.

5.

Ultimately, Carey learned that Athens Pinecrest owned 150 Pine Lodge, and that Douglas Hooker ("Hooker") was a representative of Athens Pinecrest. (*Id* at 33, Ins. 1-10). Carey spoke to Hooker on the phone sometime in May of 2023. (*Id* at pg.33, Ins. 10-25).

Response to 5.

I would add that contacting the individuals affiliated with the property located at 150 and 250 Pine Lodge Rd. was not the most difficult thing to do. A quick search brought me to a site called Q Public, there are also Government sites, Secretary of States website being a site that would allow you to check your findings on Q Public, also it will give you more information about the owner as far as the business end.

6.

Carey informed Hooker that he wanted to rent 150 Pine Lodge. (*Id*). Hooker reportedly responded to Carey that "I'm not going to tell you you can, but I'm not going to tell you you can't (*Id* at pg. 33, 20-21).

Response to 6.

After asking Mr. Hooker about the property coupled with the fact that the taxes were not paid and the company Athens Pinecrest Village Development Partners LLC was Administratively Dissolved, it was clear to me that there was no interest currently being put in by the man that I searched out as being one of the owners. I would also add to the scenario that I told him I was going to move in and when they want the property back then just let me know and I'll get out of the way, he did not object.

7.

Carey attempted to move to 150 Pine Lodge in May of 2023. Carey did not have a rental agreement, either oral or written, to live at 150 Pine Lodge. (*Id* at p. 41, Ins 20-23)

Response to 7.

True. There was not a rental agreement, does everyone have to possess a rental agreement? I don't see anywhere in law where someone must have a rental agreement to legally posess a property. The fact of the matter is that if the police would have done a thorough job that the company would not be having to step in.

8.

Carey changed the locks for 150 Pine Lodge. (*Id* at p. 50 Ins 10-12 )

Response to 8.

True. I changed the locks based on the simple fact that the house was obviously abandoned, and the house was recently broken into, I saw that the home needed some care. After I changed the locks I contacted the owners Bradly Huchins, and Douglas Hooker and let them know what happened, also I was able to contact Bradely Hutchins who was finished with the property and really didn't know what was going on with the property.

9.

On the afternoon of May 15, 2023, Carey was ripping out the carpet at 150 Pine Lodge when Clarence pulled up to 150 Pine Lodge. (*Id* at p. 68, Ins. 21-24).

Response to 9.

I was tearing out the carpet because it was soaked with water, which led to mold and mildew. The carpet was wet because of a pipe that was leaking simply because someone stole the refrigerator and did not turn the water off. They cut the pipe and left the water on.

10.

Clarence questioned Carey why he was at the property as Clarence represented that he was the caretaker. (*Id* at p. 69, Ins. 1-15). Carey challenged Clarence's statement that Clarence was the caretaker, and Clarence called the police. (*Id* at p. 70, Ins. 1-10).

Response to 10.

I had known that these were untrue statements made by Clarence, before my decision to inhabit the place I made sure I was within my legal limit. I had talked to everyone who I could find who was associated with the property, I contacted Witworth Construction who had drew the renovation plans and the Landscape Engineer Josh Coons and asked if they knew anything about the property and they both told me that the project was scrapped, meaning that the work was not going to take place.

11.

Defendant Cameron and Officer Lane responded to the call and first met with Clarence at 250 Pine Lodge. (Exh. 2 – Field Case Report by Caleb Cameron).

Response to 11.

Ok, This is further evidence that Clarence Dake is a convict who does not care about the state of his home and lives in squaller, He's currently in jail and looking at his disgusting living situation is even more of a reason to think that he was not telling the truth and the no one could possibly want him to be in charge of anything on their property.

12.

While Officer Lane checked to see if Carey was present on the property at 150 Pine Lodge, Cameron inquired of Clarence as to the ownership of 150 Pine Lodge and the other properties, (Exh. 3 – Bodycam #1 of Cameron, 5/15/2023, 2:02-2:09).

Response to 12.

This particular instance is further proof that the officers did not have authority to do what they did. As you can see from the video document, the question of ownership and affiliation was still fresh in the officers mind. They asked Clarence several times to let them speak with the owners of the property, or to get them in touch with the officers. This is documented in (Exhibit #15 00:32:02 00:38:00) being the audio of officer Lane asking Fred Dake about the owner. Asking to see if Fred had any paperwork from the owner of the property, as if this proof was a deciding factor in the achievement of proper authority, to remove someone form their home.

13.

Clarence informs Cameron that the properties are owned by Pinecrest Lodge Village LLC and showed him a website showing his name and email address in relation to the property. (Bodycam #1 of Cameron, 5/15/2023, 4:04-4:09, 13:11-13:17, and 15:45-15:49; Exh. 4 Bodycam #2 of Cameron, 5/15/2023, 15:20-15:30).

Response to 13.

This statement has no proof of authentic value, when we consider Clarences back ground and the fact that we don't know what Clarence showed the officer. The officer clearly had a pre-determined plan of how he figured things would be and acted in such a way to obtain the outcome that he had in mind. It is a fact that the information concerning 150 Pine lodge or any address for that matter was and is readily available to whomever wants or needs it, and the availability of such information is the center of this lawsuit. The police are in a situation that demands respect, which is and was given to them by Carey regardless of what occurred. However, it is essential that the police are correct, and that they go above and beyond to gather the correct information before making decisions that will affect people's life in such a negative manner.

14.

Clarence agrees that he wants Carey barred from the Properties for the maximum of two years. (Bodycam #1 of Cameron, 5/15/2023, 4:04-4:09, 13:11-13:37, and 15:45-15:49; Exh. 4 – Bodycam #2 of Cameron, 5/15/2023, 1:19-1:26). Cameron and Clarence joined Officer Lane at 150 Pine Lodge, but Carey was no longer at the property.

Response to 14.

True.

15.

Later on May 15, 2023, Clarence calls the police again as Carey had returned to 150 Pine Lodge. Cameron and Lane returned to the property and confront Carey . (Exh. 5- Bodycam of Officer Lane, 5/15/2023, 00:48; Bodycam #1 of Cameron, 5/15/2023 6:36).

True.

### 16.

Carey admits that he does not own 150 Pine Lodge but he is adversely possessing the property. (Bodycam of Officer Lane, 5/15/2023, 1:43-1:54; Exh. 21 – Carey Hand-Written Notes).

### Response to 16.

True. Adverse possession does not require ownership, only possession that is actual. Open, notorious, exclusive, hostile and continuous. This supports that the Plaintiff was lawfully occupying the property under recognized legal principals, making the officers' actions to remove him a violation of his fourth Amendment right against unlawful seizure and Fourteenth Amendment due process rights. (Exhibit 21, [20]).

### 17.

Clarence informs Cameron that he has another renter that is supposed to rent 150 Pine Lodge in June, and that such tenants' rent is being paid via a behavioral/mental health service called, Advantage. (Bodycam #2 of Cameron, 5/15/2023, 4:51-5:30.)

### Response to 17.

Disputed. Clarence had no such tenant at the time; the property was abandoned and in disrepair. Officers' reliance on Clarences statements to justify removing Plaintiff constitutes deliberate indifference to the Plaintiffs' established rights, violating clearly established constitutional protections.

### 18.

Clarence places a phone call to a female who works for Advantage. (Bodycam #2 of Cameron, 5/15/2023, 10:01-10:20).

### 19.

This female speaks to Cameron and confirms that Clarence is Advantage's contact to place tenants at 150 Pine Lodge. (Bodycam #2 of Cameron, 5/15/2023, 10:20-11;22).

20.

Upon hanging up, Clarence, again, showed Cameron the rental website for 150 Pine Lodge that listed Clarence as the contact for the rental. (Bodycam #2 of Cameron, 5/15/2023, 15:20-15:30). Clarence tells Cameron that he has been the property manager for about two months. (Bodycam #2 of Cameron, 5/15/23, 29:42-29:47)

Response to 18-20.

Disputed. This purported "confirmation" is unreliable given Clarence's lack of authority and criminal history. No verification was conducted. Plaintiff's lawfull presence and ownership records on Qpublic or Georgia Company Registry superscede Clarence's fraudulent claims. Officers' reliance on unverified statements without independent confirmation demonstrates unreasonable action under the Fourth Amendment. (Exhibits A, B, [20], [23]).

21.

Carey and Cameron discuss why Carey was at 150 Pine Lodge, (Body Cam #2 of Cameron, 5/15/2023, 16:08).

Response to 21.

Disputed. Officers failed to verify Clarence's claims, despite their duty to investigate thoroughly. Adverse Possession does not require paperwork; ignoring evidence of lawful occupancy constitutes a constitutional violation. (Exhibits A, B, [20], [23].

22.

Carey fails to provide any documentation that he lives at 150 Pine Lodge when asked by Carey. (Bodycam #2 of Cameron, 5/15/2023, 16:41-16:48).

Response to 22.

This statement is eluding the facts of the case, which are that Clarence did not provide any documentation, and he was not an upright individual with an outstanding record. A simple check on his name would have revealed truth in the matter, which would have saved the police and taxpayer a lot of time and money.

23.

Carey contends that his authority to be on the Properties was from "common law", (Bodycam #2 of Cameron, 5/15/2023, 19:16-19:23).

Response to 23.

True. Adverse possession requires these elements to be considered:
1. Actual Possession-The possessor must physically occupy and control the property in a way that a true owner might.
2. Open and Notorious-The possession must be obvious and visible, giving the true owner constructive notice that their property id being occupied without permission.
3. Exclusive-The possessor must hold the property to the exclusion of others, including the true owner.

       Hostile-The possession must be without the owner's permission and against their interest.
4. Continuous-The possession must be uninterrupted for the entire statutory period.

These elements were not considered by the officers, thereby violating my Fourth and Fourteenth Amendment Rights.

### 24.

Cameron then requested that Sgt. King come to the scene to further discuss the issues with Carey. Upon King's arrival, King and Carey discuss the ongoing situation.

Response to 24.

### 25.

Carey admits to King that he does not have any paperwork to be at 150 Pine Lodge. (Exh.6- Bodycam of Sgt. King, 5/15/2023, 01:28-01:33).

Response to 25.
Adverse possession doesn't require documentation. Kings failure to independently verify facts and subsequent actions contributed to unconstitutional removal. (Exhibits 6, [20], [23]).

### 26.

Carey contends that this is a "civil matter" to which King agrees that Carey could take Clarence to court or that, to the extent Carey knew who the owner was, that Carey could have the argument with him. (Bodycam of Sgt. King, 5/15/2023, 02:48-2:50 and 09:00-09:00).

Response to 26.
Police lack jurisdiction to unilaterally remove a lawful occupant or enforce a "ban" absent jurisdictional process. Officers' actions exceeded authority and violated clearly established law.

### 27.

Clarence barred Carey for two years. (Bodycam of Sgt. King, 5/15/2023, 03:47-3:55).

Response to 27.

True.

### 28.

King instructs Carey to hand over the keys to 150 Pine Lodge, informs Carey and Clarence to work out a time tomorrow for Carey to his belongings out of 150 Pine Lodge, and urges them to contact law enforcement who will be willing to stand-by for the exchange of Carey's belongings to ensure it is done the right way. (Bodycam of Sgt. King, 5/15/2023, 09:13-09:22).

Response to 28.

True. But the ban instructions constitute de facto eviction and deprivation of property without due process, violating the Fourteenth Amendment. Plaintiff's personal property remained on the premises, reinforcing the illegality of unilateral removal. (Exhibits A, B, [20], [23]).

29.

Officer Abdul-Muid and Sgt. Blair responded to 150 Pine Lodge in reference to a complaint by Clarence that Carey had trespassed on the property again. (Exh. 7 –Field Case Report by Officer Abdul-Muid: Bodycam of Abdul-Muid, 5/19/2023, 2:39-2:50; Bodycam of Sgt. Blair, 5/19/2023, 0:40-1:43).

Response to 29.

Mostely true. However, these encounters confirm officers acted without verifying Clarence's authority or Plaintiff's lawful occupancy. Requiring Plaintiff to produce documentation where adverse possession is legally sufficient shows deliberate indifference and a constitutional violation. The officers repeated reliance on unverified third-party statements demonstrates egregious disregard for established rights, supporting denial of summary judgement.(Exhibits A, B, D, E, [20], [23])

30.

Sgt. Blair spoke to Carey on the phone while she was at the property, and Carey admitted that he returned to the property and had placed items at the property. (Exh. 8 – Bodycam of Officer Abdul-Muid, 5/19/2023, 45:44-46:01; Exh. 9 – Bodycam of Sgt. Blair, 5/19/2023, 31:22-31:41).

Response to 30.

True.

31.

When asked by Sgt. Blair if he has any documentation showing he has the right to be there, Carey responded that he did not have documentation (Bodycam of Sgt. Blair, 5/19/2023, 32:08-32:17).

Response to 31.

True.

32.

Upon further questioning, Sgt. Blair determined that Carey did not have documentation or verbal consent from the property owner to be on the property (Bodycam of Sgt. Blair, 5/19/2023, 32:21-32:47).

Response to 32.

This is an essential element of Adverse Possession.

33.

As such, Sgt. Blair instructed Carey to remove his items from 150 Pine Lodge or to provide supporting documentation that he resides at the location. (Sgt. Blair, 5/19/2023, 46:00-46:17).

Response to 33.

The police department is confused about a lot of different things, because they don't study.

34.

Clarence called the police again on May 29, 2023, concerning Carey being back on the property. (Exh. 10 - Field Case Report by Cameron, 5/29/2023).

Response to 34.

True.

35.

Cameron and Lane responded. (Bodycam of Cameron, 5/29/2023, 01:24-1:41). Cameron confronted Carey and again requested that Carey provide him with documentation supporting that he should be there. (Exh. 11 - Bodycam of Cameron, 5/29/203, (3:19).

Response to 35.

Again this was already addressed when I spoke with the officers before, Cameron seemed very primed for my arrest in order to move up in the ranks.

36.

In response, Carey, requested that Clarence provide documentation that he was the proper representative for the property. (Bodycam of Cameron, 5/29/2023, 3:16-3: 19).

Response to 36.

True. Plaintiff knew Clarence had no authority. This request underscores that Plaintiff acted in good faith and further demonstrates that any subsequent removal or arrest was arbitrary and violated Fourth and Fourteenth Amendment protections.

37.

Cameron informed him that Clarence was listed as the rental agent on the website. (Bodycam of Cameron, 5/29/2023, 03:55-4:18). Cameron and Lane both reminded Carey that he had been previously barred from the property during the May 15, 2023, encounter. (Bodycam of Cameron, 5/29/2023, 04:19-4:58).

Response Partially true. Officers' reliance on an illegal prior ban violates their own departmental policy (Directive 8.02.01) against bias-based policing. They ignored the lawful evidence of Plaintiff's occupancy, contributing to unconstitutional banishment.

38.

During this encounter, Clarence shows Cameron a property management contract for the entire property, which would include 150 Pine Lodge and 250 Pine Lodge (Exh. 12 - Property Management Agreement, the "Contract").

Response to 38.

Response: Disputed. The contract was fraudulent; notarized by a family member. Plaintiff relied on verified sources (QPublic, Georgia Company Registry) rather than Clarence's fabricated documents. Officers' reliance on the fake contract demonstrates unreasonable action under the Fourth Amendment. (Exhibit 12, [23]).

39.

The Contract, which was executed May 3, 2022, listed the owner of the property as Pinecrest Lodge Village Land Trust, LLC ("Pinecrest Lodge"), and was between Clarence and Pinecrest Lodge.

40.

The Contract noted that Pinecrest Lodge appointed Clarence "to exclusively manage the property located at 150 -250 Pinecrest lodge rd (sic), Units, 1,2,3,4,5,6,7 Athens, Ga 30605 [. . . .]" The Contract was signed by an alleged owner of Pinecrest Lodge and Clarence. The Contract was also notarized by Tracey Dake.

41.

Upon the information available to Cameron, including the Contract, Camreon placed Carey under arrest for criminal trespass. Carey was transported to the Athens-Clarke County Jail where he later bonded out.

Response to 41.

Response: True. The arrest was based on unverified sources (Trulia, Clarence), rather than legally binding ownership records, constituting unlawful seizure under the Fourth Amendment. The Mayor and Police Chief may be liable for failing to supervise officers' adherence to policy.

42.

On August 12, 2023, Defendant Falcon responded to 250 Pinecrest after Fred Dake, Clarence's brother, called the police after a house on the property, that was supposed to be vacant, now had power. (Exh. 13 - Field Case Report by Falcon, 8/12/23).

Response to 42.

Response: True in part. Plaintiff had lawful authority via Bradley Hutchins, and Douglas Hooker, but officers ignored this and prioritized paperwork over verified legal rights, demonstrating unconstitutional seizure and disregard for due process. (Exhibits A, B, 15, [23]).

43.

After Falcon was on-scene, Carey arrived and informed Falcon that he, Carey, had been illegally barred from the property. (Exh. 14 - Bodycam of Falcon, 8/12/2023, 21:10-21:17 and 22:57-23:15).

44.

Once Officer Lane arrived at the scene, he asked Carey what authority he had to be at 250 Pine Lodge, to which Carey finally responded that Bradley Hutchins gave him authority to be there. (Bodycam of Falcon, 8/12/2023, 29:00-29:13; Exh. 15 - Bodycam of Officer Lane, 8/12/2023, 5:56-6:10).

45.

Carey, however, did not provide Falcon any written documentation to show that he had authority to be there.

46.

Instead, Carey contended that Clarence was not the owner and that the Contract was fake. (Bodycam of Officer Falcon, 8/12/2023, 18:12-18:17, 26:20-26:27, 31:13-31:15). Ultimately, Carey was arrested for criminal trespassing. (Exh. 16 - Arrest Field Report by Officer Falcon, 8/12/23).

Response to 46.

True. This arrest was predicated on fraudulent documentation, showing egregious failure to investigate, violating clearly established constitutional rights.

47.

Aaron and Elizabeth were also barred from 150 Pine Lodge and 250 Pine Lodge for two years.

Response to 47, 48

True. However, barring individuals based on unverified claims constitutes arbitrary deprivation of property and liberty rights, supporting Plaintiff's constitutional claims

48.

Lane encourages Aaron to contend that Clarence is not the property owner, and they need to get some documentation to establish their positions.

49.

Denis was not present for either arrest incidents with Carey. (Exh. 20-Affidavit of Denis).

Response to 49.

Response: True. Materially undisputed, no impact on Plaintiff's claims for other officers' actions.

50.

Both of Carey's arrest for criminal trespass, from May 29 and August 12, were submitted to the Solicitor General for Athens-Clarke County. Upon reviewing the files and materials, the Solicitor General noted, for both arrests, that "[although there was sufficient probable cause for the issuance of a warrant, the evidence is not sufficient to prove guilt beyond a reasonable doubt." (Exh. 17 - State Court of Athens-Clarke County Entry of Dismissal and order of Dismissal dated 10/03//2023, Case ST-23-CR-1673; Exh. 18 - State Court of Athens-Clarke County Entry of Dismissal and Order of Dismissal dated 10/03/2023, Case ST-23-CR-1035)

51.

On October 3, 2023, the State Court of Athens-Clarke County entered orders of dismissal for both of Carey's arrests. (Exh. 17 - State Court of Athens-Clarke County Entry of Dismissal and Order of Dismissal dated 10/03//2023, Case ST-23-CR-1673; Exh. 18 - State Court of Athens-Clarke County Entry of Dismissal and Order of Dismissal dated 10/03/2023, Case ST-23-CR1035

Response to 50, 51

Response: True. Dismissal confirms lack of probable cause, supporting Fourth Amendment unlawful arrest and malicious prosecution claims. Officers' actions were objectively unreasonable. (Exhibits F, [25], [27]).

52.

Pinecrest Lodge has sought orders for eviction from non-parties that were renting 150 Pinecrest Lodge. (Exh. 15 – Magistrate Court of Athens-Clarke County Order dated 05/06/2024) Pinecrest Lodge, through, Clarence, obtained an order from the Magistrate Court of Athens-Clarke County to evict Courtney and Davon

Doss, the tenants that were renting 150 Pinecrest Lodge from Clarence via Advantage during the summer of 2023.(*Id*).

### Response to 52-56

Disputed. Plaintiff highlights that police actions occurred independent of owner requests, confirming unlawful eviction. Misidentification of the owner and failure to verify authority demonstrate procedural due process violations under the Fourteenth Amendment. The Doss family remained until August 2025, further proving the ACCPD lacked authority to act unilaterally. (Exhibit 19, [25], [27]).

### 53.

Upon a motion to set aside and vacate the judgment and eviction order, the Magistrate Court received and reviewed evidence to determine that Pinecrest Lodge was not the owner of the properties but that Athens Pinecrest Lodge was, in fact, the owner of said property. (*Id*).

### 54.

The Magistrate Court made such determination based on a review of Limited Warranty Deeds and recorded deeds that were held in the Office of the Superior Court of Athens-Clarke County, and the testimony from Michael Davis, the registered agent for Athens Pinecrest Lodge, and attorney Brian Patterson. *(Id)*.

### Response to 54.

### 55.

Attorney Patterson testified to the Magistrate Court that Athens Pinecrest Lodge had to "evict [Clarence] from their property as [Clarence] is currently squatting on property owned by Athens Pinecrest Lodge." (*Id*).

### 56.

Patterson further testified that Athens Pinecrest Lodge "never had any professional relationship with [Pinecrest Lodge or Clarence]." (*Id*). Based on this evidence now before it, the Magistrate Court set aside and vacated its previous order and dismissed the eviction proceeding. (*Id*).

# PLAINTIFFS' RESPONSE TO REQUEST FOR SUMMARY JUDGEMENT

Adverse possession - a legal doctrine allowing someone to claim ownership of land by occupying it continuously and openly without the owners permission for a statutorily defined period, meeting requirements such as actual possession, open and notorious use, exclusive control, and "hostile" (non-permissive) intent. The length of time required by state, and successful claims can result in formal title to the property, often with the goal of encouraging productive use of neglected land.

## How Adverse Possession works

To establish a claim of adverse possession, a person must meet several specific criteria, which are sometimes referred to as 5 elements.

- Actual Possession: The individual must physically occupy and use the property as a true owner would.
- Open and Notorious Possession: The occupation of the property must be obvious and visible enough to give the true owner notice that their land is being used without permission.
- Exclusive Possession: The possessor must have exclusive control over the property, excluding the true owner and the general public from using it.
- Continuous Possession: The possession must be uninterrupted and consistent throughout the entire statutory period, which can range from a few years to a few decades. (In Georgia it is 20 years).
- Hostile Possession: This does not mean aggressive hostility but rather the use of the property without permission of the true owner.

## Purpose of Adverse Possession

This doctrine serves to encourage productive land use by rewarding those who make better use of property than the actual owner. It also resolves property disputes by settling unclear ownership after a period of time and can address issues with abandoned or neglected land.

### How to Prevent Adverse Possession

### Landowners can prevent adverse possession by:

- Regularly inspecting their property and its boundaries.
- Posting "No trespassing" signs.
- Building fences or gates, to clearly mark boundaries.
- Promptly taking legal action against any unauthorized occupation.
- Granting written permission for any use of their land to avoid claims of hostile possession.

### The Claims Against the County

To weigh in on the first three assessment issues;
    (1) that the Plaintiffs' constitutional rights were violated;
    (2) that the county had a custom or policy that constituted deliberate indifference to that constitutional right;
    (3) That the policy or custom caused the violation.

It is known that the 14th amendment guarantees that a person shall not be deprived of life liberty, or property without due process of law. Which means that I had my 14th amendment right violated. The state constitution says in the very first amendment that no person shall be deprived of life, liberty, or property except by the due process of law. The second amendment goes on to say that protection to person, and property is the paramount duty of the government. This way of thinking could have taken the officers to a thought process that was applicable for the situation.

The very start of this assessment has been enough evidence to prove that the officers involved in the situation could be looked at as traitors to the Constitution. It was Officer Caleb Cameron that said "we don't do the Constitution" when I asked him about my Constitutional rights, whether or not they were being considered.

The police did not have the authority to banish me at any time, nor did they try to obtain any information that was applicable to the situation. The police did not make sure that Clarence Dake was a verified representative of the property. The Officers did not ever check Clarences legal background. *Jackson v. State, 242 Ga. App. 113.* A simple check into Clarence Dakes background would have shown that he was not possibly affiliated with the owners of the property.

The outcome of the decisions made by the officers were built upon what Clarence Dake stated. Clarence Dake was on felony parole. Had the officers involved considered the fact that we have rights, perhaps they would have not violated them. My rights were violated because I was removed from my home and banned without due process, or any type of investigation into the allegations of the alleged land lord Clarence Dake. My two year banishment period is a policy or custom established by the county and used frequently by the County in both

commercial and residential settings. When this type of banishment occurs pertaining to a residence there should always be a court order.

## CONCLUSION

In the situation on May 15th, 2023, Caleb Cameron stated "We don't do the constitution", so why would they care about violating it? Sargent Jimmy King has an inaccurate concept of freedom, and an inaccurate concept of law, how would he know whether or not his actions caused a violation? His concept of legal theory is not where a Sargent should be. The officers behavior, knowledge and application of the law is concerning to me, as a citizen of not only this state but this great country. Jimmy King is a Sargent, it is easy to see that this title holds a certain value of earned respect, coupled with an understanding of law that is greater than the title through which it is achieved. Under King and Cameron, the people have no Constitutional rights. Because the officers don't know about the rights of the people, and the night of May 15, 2023 I spoke up about the violation of my rights. There were and are laws in place concerning a situation where squatting might be an issue, which were recently changed in order to cater to a property owner who has trouble with individuals staying in their house without permission. I, agree with the new squatting law and feel that the new law is necessary and beneficial to property owners. Had Clarence Dake been a property owner or the authorized agent for a property owner, I would have been aware of this and would not have made a decision that could have put him or anyone in a bad situation. The officers committed Constitutional violations by becoming a Judge and Jury in the field and making decisions that banned me from entering a property. Second, all of my rights are clearly established; in this case, the officers involved violated my right to due process, which is the first Constitutional right guaranteed in our State Constitution.

Hindsight is not applicable as a defense in this situation because the defendant officers were told everything they needed to know before they did what they did. Yes, it is ok for humans to make mistakes, however it is part of the "Policies and Procedures, 5A.02.01" to thoroughly and professionally investigate all criminal activity assigned for an investigation". Thus, the officers and their unlimited access to information must have had more places than Trulia, to search.

Clarence's presentation of any evidence of any type of ownership could have easily been contradicted with just a little bit of police work. The only thing done by any of the officers was griping and complaining about it being hot or griping about having to work, there was zero police work done correctly. I was the only individual at the scene having authority over the property which, at the time was my home, and I was the only one removed. I was arrested and charged with trespassing. The charges were later dropped because the individual Clarence Dake had no authority over the property.

## DISSMISS CHARGES AGAINST THE OFFICERS THAT HAD NO SAY IN THE MATTER

It is clear to me that there are two of the officers that did not have a say in the matter, may it please the court that the charges against them be dismissed without prejudice, Officer Austin Falcon and Officer Stanely Denis. Officer Denis was mistakenly put into the suit because the Athens Clarke County Police Department would not give me the videos that I requested via email. Officer Falcon was doing what he was told, honestly he and Officer Lane were the only two individuals that weren't pressing one way or the other. Lane was asking questions and joined the main narrative, however I feel like these officers were just in the wrong place at the wrong time and were just doing their job and dealing with the individuals that they deal with from day to day. May it please the court that the case against Officers Falcon and Officer Denis be dropped without prejudice.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion for and response to the Defendants Request for a Summary Judgement has been received and analyzed by the Plaintiff Carey Mccomas, and personally served my response on the court and have personally given a copy of the same to the defenses legal counsel.

James F. Banter
Ga. Bar No. 581797
231 Riverside Dr.
Macon GA 31204
478-749-9992
jbanter@jamesbatesllp.com

This_____date of October, 2025

**Respectfully submitted,**
**Carey Leneil McComas**
*Plaintiff, Pro Se*
706-510-4122
1585 Cherokee Road
Winterville, Georgia 30683