IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

CAREY LENEIL MCCOMAS,              *

    Plaintiff,                     *

vs.                                *
                                          CASE NO. 3:24-cv-89 (CDL)
UNIFIED GOVERNMENT OF ATHENS       *
CLARKE COUNTY, *et al.*,
                                   *
    Defendants.                    *

                                   *

_____

O R D E R

The Athens-Clarke County Police Department received complaints on multiple occasions that Plaintiff Carey McComas was trespassing on private property in Athens, Georgia. McComas admitted to police officers that he was attempting to adversely possess the property and had no documentation or consent from the owners to be on the property. Clarence Dake, an apparent resident of the property who provided officers with a contract and a website listing him as the property manager, told officers that he wanted to ban McComas from the property for two years. When McComas returned to the property two weeks later, officers arrested him for criminal trespass. McComas asserts that officers did not have probable cause to arrest him. He brought this action against the Unified Government of Athens-Clarke County ("ACC"), the ACC Police Department, ACC Mayor Kelly Girtz, ACC Police Chief Jerry Saulters,

and ACC Police Officers Jimmy King and Caleb Cameron.[1]  Defendants filed motions for summary judgment, asserting that they are entitled to judgment as a matter of law on all of McComas's claims. For the following reasons, Defendants' motions (ECF Nos. 31 & 33) are granted as to all federal law claims against Defendants.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

## FACTUAL BACKGROUND

Viewed in the light most favorable to McComas, the record reveals the following facts.

---

[1] McComas initially named Austin Falcon and Stanley Denis as Defendants but abandoned his claims against them in response to Defendants' summary judgment motions.  Accordingly, Falcon and Denis are entitled to summary judgment.

In February of 2023, Carey McComas applied online to rent a house located at 150 Pine Lodge Road in Athens, Georgia. McComas submitted four total applications and visited the property on multiple occasions. On these visits to the property, McComas saw Clarence Dake, an apparent resident of one of the houses at 250 Pine Lodge Road. McComas Dep. 37:4-14, ECF No. 31-2. Dake claimed to be the caretaker of the property located at 150 Pine Lodge Road and 250 Pine Lodge Road, which bordered each other. *Id.* at 37:17-23. McComas and Dake never discussed having McComas rent 150 Pine Lodge. *Id.* at 39:1-14. When McComas did not receive any response to his rental applications, McComas conducted online research and claims he discovered that Douglas Hooker and Bradley Richards were listed as the owners of the property. *Id.* at 34:11-16; 40:20-25. In May of 2023, McComas called Hooker to inquire about moving onto the property. Hooker told McComas: "I'm not going to tell you you can, but I'm not going to tell you you can't." *Id.* at 33:20-21. McComas also claims that he talked with Richards about moving on to the property, but Richards stated that he "d[id]n't have anything to do with the place anymore." *Id.* at 40:8-11. Following these conversations, McComas moved into 150 Pine Lodge in May of 2023 without any rental agreement and immediately changed the locks to the house.

On May 15, 2023, Dake approached McComas while McComas was ripping carpet from the house. Dake questioned why McComas was on

the property.  McComas responded by challenging Dake's claim that he was the caretaker of the property.  Dake then called the police. Officers Cameron and Lane responded to the scene and met with Dake. Dake informed Officer Cameron that Pinecrest Lodge Village, LLC, owned the property at 150 Pine Lodge Road and 250 Pine Lodge Road. Defs.' Mot. Summ. J. Ex. 3, Cameron May 15 Bodycam #1, 4:04-4:11; 13:11-13:20 (05/15/2023), ECF NO. 31-4.[2]  He then showed Officer Cameron a website with Dake's name and email associated with the company and the property.  *Id.* at 15:45-15:52.  Dake stated to the officers that he would like to bar McComas from 150 Pine Lodge and 250 Pine Lodge for two years.  By the time Dake informed the officers of these wishes, McComas had left the property.

That night, Dake called the police, informing them that McComas had returned to 150 Pine Lodge.  After arriving on the scene, Officers Cameron and Lane spoke with Dake, who informed them that another renter was moving into 150 Pine Lodge in June.[3] Defs.' Mot. Summ. J. Ex. 4, Cameron May 16 Bodycam #2, 4:51-5:30 (05/16/2023), ECF No. 31-5.  Dake claimed that Advantage, a behavioral health service, would be paying rent on behalf of this renter.  *Id.*  Officer Cameron validated this information by talking on Dake's phone with a female who purported to work at Advantage,

---

[2] All video recordings referenced in this Order are on file with the Court.
[3] Based on the time stamps of the bodycam footage, police responded to the call just after midnight on May 16.  Therefore, the Court notes the following events took place on May 16.

and who confirmed that Dake was the contact for the property and that a renter was planning to move into 150 Pine Lodge in June. *Id.* at 10:01-11:22. After the phone call, Dake again showed Officer Cameron the website listing him as the property manager and informed Cameron that he had worked in this capacity for a couple of months. *Id.* at 15:20-15:30; 29:42-29:47. Officers Cameron and Lane then spoke to McComas, who claimed he was legally allowed to be on the property through adverse possession. McComas failed to provide any documentation that he lived at 150 Pine Lodge and claimed his authority to live on the property came from the "common law." *Id.* at 19:16-19:23. Sgt. King then arrived on the scene, and McComas admitted to King that he had no paperwork allowing him to be at 150 Pine Lodge. McComas did not point to any evidence that he told the officers that he had permission to be at the property. Dake told police that he wanted to bar McComas from 150 Pine Lodge and 250 Pine Lodge for two years and that McComas would be trespassing if he returned. Sgt. King instructed McComas to hand over the keys to 150 Pine Lodge and to contact law enforcement the next day to facilitate moving his belongings off the property.

Three days later, Officer Abdul-Meid and Sgt. Blair responded to a complaint from Dake that McComas had trespassed on the property again. As McComas was no longer on the property when the police arrived, Sgt. Blair spoke to McComas on the phone. McComas

admitted that he had returned and placed items on the property.
After further questioning, Sgt. Blair determined that McComas did
not have any documentation or verbal consent from the owners to be
on the property. Defs.' Mot. Summ. J. Ex. 9, Bodycam of Sgt. Blair
32:08-32:47 (05/19/2023), ECF No. 31-10. Sgt. Blair advised
McComas to remove his belongings from the property or to provide
documentation that the owners allowed him to be on the property.
*Id.* at 46:00-46:17.

On May 30, 2023, Officers Cameron and Lane responded after
Dake informed the police that McComas was back on the property.
When talking with McComas at the scene, the officers informed him
that Dake was listed on the online leasing page of the company
that allegedly owned the property and reminded McComas that he had
been barred from the property two weeks earlier. Defs.' Mot. Summ.
J. Ex. 11, Cameron May 30 Bodycam 03:55-4:58 (05/30/2023), ECF No.
31-12. During this encounter, Dake also showed the officers a
written agreement between himself and Pinecrest Lodge Village Land
Trust, LLC. Defs.' Mot. Summ. J. Ex. 12, Property Management
Agreement, ECF No. 31-13. This agreement stated that Dake was
appointed as the company's agent and had the exclusive authority
to manage the property at "150 - 250 Pinecrest lodge rd [sic]."
*Id.* at 1. The agreement, signed by an alleged owner of the company
and Dake, was notarized by Tracey Dake. *Id.* The officers asked
McComas if he had any proof that he was entitled to be at the

6

property.  McComas, who had no documentation to support his right to be on the property, responded that Dake should provide documentation that he was an authorized representative for the property.  Cameron arrested McComas for criminal trespass and transported him to the Athens-Clarke County Jail, where he later was released after posting bond.[4]

In October 2023, the Solicitor General of Athens-Clarke County filed two entries of dismissal in the State Court of Athens-Clarke County, dropping both of the criminal trespass charges against McComas.  Defs.' Mot. Summ. J. Ex. 17, State Court of Athens-Clarke County Entry of Dismissal and Order of Dismissal (10/03/2023), ECF No. 31-18; Defs.' Mot. Summ. J. Ex. 18, State Court of Athens-Clarke County Entry of Dismissal and Order of Dismissal (10/03/2023), ECF No. 31-19.  The Solicitor General concluded for each charge that "[a]lthough there was sufficient probable cause for the issuance of a warrant, the evidence is not sufficient to prove guilt beyond a reasonable doubt." *Id.*  The state court made both entries of dismissal the order of the Court. *Id.*

In May 2024, the Magistrate Court of Athens-Clarke County, in an action to set aside a Judgment and Order for Writ obtained by

---

[4] Officers Falcon and Lane responded to another call at the property in August 2023, and they arrested McComas for criminal trespass.  McComas did not bring any claims against Lane, he abandoned his claims against Falcon, and he did not point to evidence that any other officers were personally involved in the August 2023 arrest.

Dake on behalf of Pinecrest Lodge Village Trust, LLC, entered an Order finding that Pinecrest Lodge Village Land Trust, LLC, was not the owner of the property, but rather Athens Pinecrest Village Development Partners, LLC, was the rightful owner. Defs.' Mot. Summ. J. Ex. 19, Magistrate Court of Athens-Clarke County Order (05/06/2024), ECF No. 31-20. The Order noted that Athens Pinecrest Village never entered into a property management agreement with Dake, nor gave Dake authority to manage or lease the premises. *Id.* Further, the Order stated that Athens Pinecrest Village had to evict Dake from the property because he was a squatter. *Id.* Athens Pinecrest Village also believed that Dake committed acts of fraud by presenting a fraudulent property management agreement and by leasing property that Dake did not have authority to lease. *Id.*

## DISCUSSION

McComas filed this action pursuant to 42 U.S.C. § 1983, naming as Defendants Athens-Clarke County ("ACC"), the ACC Police Department, ACC Mayor Kelly Girtz, ACC Police Chief Jerry Saulters, and ACC Police Officers Jimmy King and Caleb Cameron. McComas alleges violations of the Fourth and Fourteenth Amendments. He further contends that Defendants conspired to deprive him of his constitutional rights under 42 U.S.C. §§ 1985 and 1986 and violated two federal criminal statutes, 18 U.S.C. §§ 241 and 242. McComas also asserts state law claims for intentional infliction of emotional distress, false imprisonment, malicious prosecution,

theft, and defamation.  Defendants move for summary judgment on all of McComas's claims.  The Court addresses each claim in turn.

## I.    42 U.S.C. § 1983 Claims

McComas asserts § 1983 claims against all Defendants.  He maintains that King deprived him of his property without due process by removing him from the property and taking his keys on May 16, 2023.  He further contends that Cameron arrested him without probable cause on May 30, 2023, in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution.  In his initial complaint, McComas brought his claims against King and Cameron in their individual capacities, while his claims against Girtz and Saulters were official capacity claims only.  Compl. at 4, ECF No. 1.  In his amended complaint, the operative pleading in this action, McComas did not specify whether his claims against the individual defendants were individual capacity or official capacity claims, so Defendants' motions presume that all the claims against the individual Defendants included individual capacity claims.  The Court will do the same.

### A.    Individual Capacity Claims Against King and Cameron

Defendants King and Cameron argue that they are entitled to qualified immunity from McComas's claims.  Qualified immunity "protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of

which a reasonable person would have known." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (quoting *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007)). Because there is no dispute that King and Cameron were acting within the scope of their discretionary authority when the challenged conduct occurred, McComas must demonstrate that "qualified immunity is not appropriate" in his case. *Myrick v. Fulton Cnty.*, 69 F.4th 1277, 1297 (11th Cir. 2023). To carry this burden, McComas must point to facts that, when viewed in the light most favorable to him, show (1) the officers' conduct violated a constitutional right, and (2) that the violated right was clearly established at the time the alleged violation occurred. *Id.* "Qualified immunity affords 'protection to all but the plainly incompetent or those who knowingly violate the law.'" *Crawford v. Carroll*, 529 F.3d 961, 978 (11th Cir. 2008) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

King and Cameron focus on McComas's claims arising out of the criminal trespass arrests, contending that arguable probable cause supported McComas's May 30, 2023, arrest.[5] Since McComas pointed to no evidence that King was present on the night of McComas's

---

[5] As explained above, McComas no longer asserts any claims against the officers who were personally involved in the August 2023 arrest, so the Court finds that any claims based on that arrest were abandoned.

arrest in May or personally participated in that arrest, King is entitled to qualified immunity on McComas's false arrest claim.

"Although 'an arrest made without probable cause violates the Fourth Amendment,' an officer is entitled to qualified immunity if he has 'arguable probable cause.'" *Richmond v. Badia*, 47 F.4th 1172, 1181 (11th Cir. 2022) (quoting *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998)). "[T]he arguable probable cause inquiry in a false arrest case is no different from the clearly established law inquiry." *Edger v. McCabe*, 84 F.4th 1230, 1236 (11th Cir. 2023) (footnote omitted) (quoting *Garcia v. Casey*, 75 F.4th 1176, 1187 (11th Cir. 2023)). Thus, if Cameron had arguable probable cause to arrest McComas, then his "violation of the law was not clearly established and vice-versa." *Id.*

"In the false arrest context, arguable probable cause exists where a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests." *Id.* at 1236-37 (quoting *Garcia*, 75 F.4th at 1186). To determine whether Cameron had arguable probable cause for McComas's arrest, the Court "'must look at the totality of the circumstances,' . . . including what [the officer] knew at the time of the arrest." *Garcia*, 75 F.4th at 1187-88 (quoting *Washington v. Howard*, 25 F.4th 891, 902 (11th Cir. 2022)). Here, Cameron contends that based on McComas's own admissions that he was adversely possessing the property and additional evidence

provided to him by Dake, he had arguable probable cause to arrest McComas for criminal trespass when McComas returned to the property despite having been banned.  McComas contends that Cameron did not have arguable probable cause because McComas told Cameron on multiple occasions that Dake had no claim to the property and that Cameron should have conducted a more thorough investigation before arresting him.

The Court finds that although Cameron turned out to be mistaken in his belief that Dake had authority or ownership over the property, he had arguable probable cause to arrest McComas for trespassing on it.  A person commits the offense of criminal trespass when he "knowingly and without authority" enters "upon the land . . . of another person . . . for an unlawful purpose" or enters "upon the land . . . of another person . . . after receiving, prior to such entry, notice from the owner, rightful occupant, or, upon proper identification, an authorized representative of the owner or rightful occupant that such entry is forbidden." O.C.G.A. § 16-7-21(b)(1)-(2).  A person also commits the offense of criminal trespass when he "intentionally damages any property of another without consent of that other person and the damage thereto is $500.00 or less or knowingly and maliciously interferes with the possession or use of the property of another person without consent of that person." *Id.* § 16-7-21(a).  Here, the record demonstrates that McComas admitted to Cameron multiple times that he did not

own 150 Pine Lodge and had no documentation showing that he was allowed to be on the property. Rather, he claimed that the "common law" and adverse possession allowed him to legally reside on the property. He contends that if Cameron had investigated his adverse possession argument, he would have learned that McComas had authority over the property under that legal principle.

McComas's bare assertion that he was adversely possessing the property does not help him. Instead, it is an admission that he did not have permission to be at the property and that he did not have title to the property. As McComas acknowledges, lack of consent is an essential element of adverse possession. In Georgia, a person can obtain title to property by adverse possession after twenty years of "public, continuous, exclusive, uninterrupted, and peaceable" possession that is "accompanied by a claim of right." O.C.G.A. §§ 44-5-161(a)(3)-(4) & -163. But "knowledge that the property belongs to someone else is fatal to an adverse possession claim because it is well settled that 'no prescription runs in favor of one who took possession of land knowing that it did not belong to him.'" *Houston v. James,* 855 S.E.2d 714, 717 (Ga. Ct. App. 2021) (quoting *Kelley v. Randolph*, 763 S.E.2d 858, 860 n.1 (Ga. 2014)). "To enter upon the land without any honest claim of right to do so is but a trespass and can never ripen into prescriptive title." *Id.* (quoting *Halpern v. Lacy Inv. Corp.*, 379 S.E.2d 519, 521 (Ga. 1989)). Thus, if Cameron had investigated

McComas's adverse possession argument as McComas contends he should have, he would have discovered that the doctrine did not apply to McComas's situation or provide him with any authority over the property, which would bolster Cameron's conclusion that McComas was knowingly on the property without any authority. Furthermore, to the extent that McComas attempted to assert a due process claim against King and Cameron based on a protected property interest in 150 Pine Lodge, that claim fails because McComas did not present any evidence that he had a legitimate protected property interest in 150 Pine Lodge.

McComas also contends that if Cameron had conducted a more thorough investigation, he would have learned that Dake was fraudulently holding himself out as the authorized representative of the property's true owner and had fabricated the evidence he used to convince the officers that he was the authorized representative. McComas, though, did not point to any evidence of what information Cameron could have learned *that would have eliminated arguable probable cause* if Cameron had conducted a more thorough investigation. Again, McComas admitted to Cameron that he did not have title to the property or permission to be there. Cameron thus knew that McComas entered the property, changed the locks, and intended to live there despite knowing that he had no legal claim to it, other than some fantastical claim that he had adverse possession rights. Based on these facts, Cameron

reasonably believed that McComas was trespassing on the property and had arguable probable cause to arrest him for violating O.C.G.A. § 16-7-21. McComas did not point to any authority clearly establishing that his arrest under these circumstances violated his rights. For all these reasons, Cameron and King are entitled to qualified immunity on the false arrest claim.[6]

B.    Individual Capacity Claims Against Girtz and Saulters

Defendants Girtz and Saulters seek summary judgement on the supervisory liability claims based on qualified immunity. Supervisory officials like Girtz and Saulters "are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Christmas v. Harris Cnty.*, 51 F.4th 1348, 1355 (11th Cir. 2022) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *overruled in part on other grounds by*, *Pearson v. Callahan*, 555 U.S. 223 (2009)). "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged

---

[6] To the extent that McComas also attempts to assert a § 1983 malicious prosecution claim based on the May 30, 2023, arrest, that claim fails. A § 1983 malicious prosecution claim "requires a seizure 'pursuant to legal process,'" such as "an arrest warrant." *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016) (quoting *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)). The May 30, 2023, arrest was warrantless, and the present record does not include any evidence that McComas was seized pursuant to legal process.

constitutional deprivation." *Id.* (quoting *Cottone*, 326 F.3d at 1360). "[T]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Id.* (quoting *Braddy v. Fla. Dep't of Lab. & Emp. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998)).

Because Girtz and Saulters did not personally participate in the alleged unconstitutional conduct, neither can be held liable under § 1983 unless a causal connection exists between their actions and the alleged constitutional deprivation. This causal connection "can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so" or when a supervisor's custom or policy "results in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (quoting *Cottone*, 326 F.3d at 1360).

McComas points to no evidence that ACC police officers had a history of arresting individuals without conducting proper investigations. Nor does McComas produce any evidence that Girtz or Saulters directed, or had knowledge of, any unlawful activity committed by ACC police officers. Therefore, Girtz and Saulters are entitled to qualified immunity.

C.    Claims Against ACC

McComas's remaining § 1983 claims are against ACC.[7]    A local government is liable under § 1983 only when its "official policy" causes a constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  Thus, McComas must show that he suffered a constitutional violation caused by an "(1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc).  "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997).  "A custom is a practice that is so settled and permanent that it takes on the force of law." *Id.* "'Proof of a single incident of unconstitutional activity is not sufficient to impose liability' against a municipality." *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting *City of*

---

[7] Because a municipal police department is an arm of the municipality and not a legal entity capable of being sued, the Court construes all of McComas's claims against the ACC Police Department as claims against ACC. *See Dean v.* Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) ("[P]olice departments are not usually considered legal entities subject to suit."). The Court also construes all of McComas's official capacity claims against the individual Defendants as claims against ACC. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (noting that official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent") (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)).

*Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality opinion)).

Here, McComas argues that his "banishment" from 150 Pine Lodge without a court order was an ACC policy or custom. Pl.'s Resp. to Defs.' Mot. Summ. J. 16-17, ECF No. 36. McComas, though, did not point to any *evidence* of such a policy or custom. And, as discussed above, McComas did not point to any evidence that would permit a reasonable juror to conclude that he had a legitimate property interest in 150 Pine Lodge. Accordingly, to the extent that McComas attempts to assert a § 1983 claim based on his banishment from 150 Pine Lodge, that claim fails.

McComas does invoke ACC Policy and Procedure 5A.02.01, which states that police officers should "thoroughly and professionally investigate all criminal activity." *Id*. at 17. McComas does not contend that this policy was a moving force behind any constitutional violation. Instead, he appears to contend that he was arrested as a result of the officers' failure to comply with the policy. An officer's failure to comply with an official policy, however, does not give rise to a *Monell* claim against a local government under these circumstances. "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (quoting *City of Springfield v. Kibbe*, 480 U.S. 257, 267 (1987) (O'Connor, J.,

dissenting)).  McComas's reliance on the investigation policy does not demonstrate an ACC policy or custom was the moving force behind any constitutional violation.[8]

## II.  Claims Under 18 U.S.C. §§ 241 and 242

In addition to his § 1983 claims, McComas asserts claims under 18 U.S.C. §§ 241 and 242 against Defendants King and Cameron.  But neither of these criminal statutes provides a private civil cause of action.  *See O'Berry v. State Att'ys Off.*, 241 F. App'x 654, 657 (11th Cir. 2007) (per curiam) ("[Section] 1983 'provides for private relief in civil actions from the deprivation of rights secured by the Constitution and its laws,' whereas §§ 241 and 242 'provide for criminal penalties for the deprivation of such rights.'") (quoting *In re Estelle*, 516 F.2d 480, 486 (5th Cir. 1975)).  Thus, Defendants are entitled to summary judgment on these claims.

## III. Claims Under 42 U.S.C. §§ 1985 and 1986

McComas also asserts claims under 42 U.S.C. §§ 1985 and 1986 against Defendants King and Cameron.  McComas contends that ACC police officers had a conspiracy to deprive him of his civil rights, in violation of 42 U.S.C. § 1985(3).  Even if McComas

---

[8] McComas does not appear to assert a § 1983 failure-to-train claim against ACC based on the shortcomings in the officers' investigation. Even if he had, he did not point to evidence that ACC failed to train its officers on the policy and that failure reflected deliberate indifference to the constitutional rights of its citizens. *See Harris*, 489 U.S. at 392 (explaining when municipal liability may exist for a failure to train).

presented enough evidence to show that ACC officers committed a
constitutional violation, his § 1985(3) claim fails because of the
intracorporate conspiracy doctrine, which "applies to claims
arising under § 1985(3)" and holds that "acts of corporate agents
are attributed to the corporation itself, thereby negating the
multiplicity of actors necessary for the formation of a
conspiracy." *Hogan v. City of Fort Walton Beach*, 817 F. App'x
717, 723 (11th Cir. 2020) (per curiam) (quoting *McAndrew v.
Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (en
banc)). Thus, "a corporation cannot conspire with its employees,
and its employees, when acting in the scope of their employment,
cannot conspire among themselves." *Id.* (quoting *McAndrew*, 206
F.3d at 1036). This doctrine "applies to public entities such as
a city and its personnel." *Id.* (quoting *Denney v. City of Albany*,
247 F.3d 1172, 1190 (11th Cir. 2001)). Because there is no dispute
that King and Cameron were acting in the scope of their employment
as ACC officers and McComas points to no evidence that any actors
outside the city were a part of the alleged conspiracy, the Court
finds that McComas's § 1985 claims are barred by the intracorporate
conspiracy doctrine.

The Court acknowledges that 42 U.S.C. § 1986 "provides a cause
of action against anyone who knows about a § 1985 conspiracy and
has the power to prevent the planned unlawful action, but neglects
or declines to do so." *Nassar v. Fla. Dep't of Agric.*, 754 F.

App'x 903, 907 (11th Cir. 2018) (per curiam).  But to assert a claim under § 1986, "a plaintiff must first allege facts showing the existence of a § 1985 conspiracy." *Id.*  As McComas failed to show the existence of a § 1985 conspiracy, his § 1986 claims against King and Cameron also fail.  Accordingly, Defendants are entitled to summary judgment on these claims.

## IV.  State Law Claims

McComas's remaining claims all arise under Georgia state law.  Under 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  District courts are encouraged to exercise that discretion "to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Murphy v. City of Aventura*, 383 F. App'x 915, 919 (11th. Cir. 2010) (per curiam) (quoting *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (per curiam)).  Having dismissed all federal claims, the Court declines to exercise supplemental jurisdiction over the remaining Georgia state law claims.

CONCLUSION

For the reasons set forth above, the Court grants Defendants' motions for summary judgment (ECF Nos. 31 & 33) as to all of McComas's federal law claims.  Having declined to exercise supplemental jurisdiction over McComas's state law claims, the

Court directs the Clerk to remand these claims to the Superior Court of Clarke County, Georgia.

    IT IS SO ORDERED, this 14th day of January, 2026.

                    S/Clay D. Land
                    CLAY D. LAND
                    U.S. DISTRICT COURT JUDGE
                    MIDDLE DISTRICT OF GEORGIA